UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ARMANDO LOPEZ-CANADA,

       Plaintiff,

v.                                Case No. 5:13cv217/MP/CJK

DAVID CARROLL, et al.,

       Defendants.
_____/

## ORDER and
## REPORT AND RECOMMENDATION

      This prisoner civil rights case is before the court upon defendants' motion to dismiss (doc. 47) the amended complaint (doc. 36) and plaintiff's response in opposition (doc. 51). Plaintiff has also filed a motion to stay, (doc. 52), which defendants oppose (doc. 54). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon careful consideration of the record, the parties' submissions, and the relevant law, the undersigned recommends that defendants' motion to dismiss be granted in part and denied in part. Plaintiff's motion to stay will be denied.

## BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff is currently in the custody of U.S. Immigration and Customs Enforcement.[1] Plaintiff initiated this lawsuit on June 5, 2013, by filing a civil rights

_____

[1] Originally from Mexico, Armando Lopez-Canada has been released from the custody of the Florida Department of Corrections and is currently being held by United States Immigration and Customs Enforcement at the Krome Service Processing Center in Miami, Florida. *See* https://locator.ice.gov/odls/homePage.do.

complaint under 42 U.S.C. § 1983. (Doc. 1). On September 30, 2014, plaintiff filed an amended complaint, the operative pleading in this action. (Doc. 36). Plaintiff's amended complaint names as defendants Sergeant David Carroll and Officer Ashley Lindsey; both defendants were employees of Holmes Correctional Institution ("Holmes CI") at the time of the events described in the complaint. (*Id.*, p. 2).[2]

The amended complaint contains the following factual allegations. At 12:45 a.m. on the night of November 12, 2011, plaintiff placed his hands in his pants to stay warm while watching television in a dayroom at Holmes CI. (*Id.*, p. 10). Plaintiff asserts this practice is common at Holmes CI because inmates' state-issued pants lack front pockets. (*Id.*). Sergeant Carroll walked by the dayroom and claimed he witnessed plaintiff masturbating. (*Id.*). Thereafter, Sgt. Carroll and Officer Lindsey ordered plaintiff into the laundry room and accused him of masturbating towards Lindsey. (*Id.*). Plaintiff denied these allegations, explaining that he placed his hands in his pants to keep warm. (*Id.*). Carroll, rejecting plaintiff's explanation, placed plaintiff in handcuffs and slammed him to the ground. (*Id.*). As a result, plaintiff injured his shoulder. (*Id.*). Lindsey witnessed the altercation but did not intervene or report Carroll's misconduct. (*Id.*, p. 11). Neither Carroll nor Lindsey filed a use of force report concerning the incident. (*Id.*).

Carroll subsequently escorted plaintiff to the medical department for a pre-confinement physical. (*Id.*). After exiting the medical department, plaintiff alleges Carroll grabbed him by the throat, lifted him off the ground, and held him against the wall while threatening him. (*Id.*). Carroll then escorted plaintiff to disciplinary

---

[2] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

Case No. 5:13cv217/MP/CJK

confinement.  (*Id.*).

The next morning, plaintiff complained of severe pain and was taken to the medical department.  (*Id.*).  After an evaluation by prison medical staff, plaintiff was transported to a local hospital and, eventually, to a hospital in Panama City.  (*Id.*).  There, X-rays revealed a broken right shoulder for which plaintiff received pain medication.  (*Id.*).  After a brief return to the infirmary at Holmes CI, plaintiff was transported to a hospital in Jacksonville.  (*Id.*).  On November 14, 2011, Dr. Kasra Nabizadeh performed surgery to repair the damage to plaintiff's shoulder.  (*Id.*).  After several days of recovery, plaintiff was relocated to Lake Butler, a prison medical facility.  (*Id.*).  A prison inspector visited plaintiff on November 18, 2011, to question him about the incident with defendant Carroll.  (*Id.*, p. 12).  Due to plaintiff's limited ability to communicate in English, the interview did not proceed.  (*Id.*).  On November 21, 2011, prison inspectors returned and completed the interview.  (*Id.*).  On November 29, 2011, plaintiff was served with a disciplinary report for masturbation.  (*Id.*, p. 11).  As a result of the disciplinary report, plaintiff was sentenced to forty-five days of disciplinary confinement.  (*Id.*).

Plaintiff returned to Holmes CI in May of 2012 after completing his physical therapy and disciplinary confinement.  (*Id.*, p. 12).  Plaintiff recalls that during his walk to breakfast on June 22, 2012, defendant Carroll issued a threat, stating, "[d]o you remember me?  As you can see I'm still here, unfortunately for you they didn't do anything to me.  You probably don't understand what I'm telling you.  What I'm telling you is to be careful."  (*Id.*).  Plaintiff "felt harassed and threatened and placed in fear of his life[.]" (*Id.*).

Based on these allegations, plaintiff brings five claims against defendants Carroll and Lindsey.  Plaintiff claims Carroll committed an Eighth Amendment violation by: (1) slamming plaintiff to the ground while in handcuffs (Claim I); (2) grabbing plaintiff by the throat, lifting him off the ground, and threatening him (Claim II); and (3) threatening plaintiff upon his return to Holmes CI after surgery (Claim III).  (*Id.*, p. 13-14).  Plaintiff also contends Carroll violated plaintiff's rights under the Eighth and Fourteenth Amendments by failing to report the use of force and by providing false statements to investigators (Claim IV).  (*Id.*, p. 15).  Finally, plaintiff alleges defendant Lindsey violated plaintiff's rights under Eighth and Fourteenth Amendments by failing to intervene when Carroll committed battery, by failing to report Carroll's use of force, and by providing false statements to investigators (Claim V).  (*Id.*, p. 15-16).

Defendants Carroll and Lindsey have moved to dismiss the complaint, asserting: (1) plaintiff failed to exhaust his administrative remedies; (2) plaintiff's allegation of verbal threats by Carroll fail to state a claim upon which relief may be granted; and (3) plaintiff's allegations concerning the failure to report a use of force and providing false statements to investigators fail to state a claim upon which relief may be granted.  (Doc. 47).[3]

---

[3] Defendants also assert they are entitled to qualified immunity with regard to Claims III, IV, and V.  (Doc. 47, p. 13-14).  As defendants merely argue that their actions in Claims III, IV, and V are not constitutional violations, an independent discussion of defendants' qualified immunity defense is not warranted.  *See Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) ("We focus on two questions: first, ... whether there is an underlying constitutional violation, [and] second, ... whether the law the public official is alleged to have violated was clearly established at the time of incidents giving rise to the suit.") (quotations and citations omitted); (Doc. 47, p. 14) ("Plaintiff fails to state a claim against defendants as to claims III, IV, or V in his complaint.  Therefore, Defendants are entitled to qualified immunity as to claims III, IV, and V and the second prong of the analysis

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss a complaint where the complaint fails "to state a claim upon which relief can be granted."  In considering a Rule 12(b)(6) motion, the court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519 (1972), accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice.  5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008).  Further, only well pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff.  *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5th Cir. 1980);[4] *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true").  Mere "labels and conclusions" are not accepted as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that

---

need not be reached.")

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

conclusory allegations are not entitled to a presumption of truth).

As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A complaint or counterclaim must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.*  The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570.

DISCUSSION

<u>Exhaustion Requirement</u>

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  28 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *Booth v. Churner*, 532 U.S. 731, 739 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 524. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth*, 532 U.S. at 734. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See id.* at 741 n.6; *McCarthy v. Madigan*, 503 U.S. 140 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998). Moreover, the PLRA requires "proper exhaustion," so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81 (2006); *see also id.*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied that the plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Alexander*, 159 F.3d at 1325-26.

The grievance procedures promulgated by the Florida Department of Corrections require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. FLA. ADMIN. CODE r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010).

<u>Procedure for Ruling on Motion to Dismiss for Failure to Exhaust Administrative
Remedies</u>

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit
outlined the procedure district courts should follow when presented with a motion to
dismiss for failure to exhaust administrative remedies under the Prison Litigation
Reform Act ("PLRA").  The court held that the defense of failure to exhaust should
be treated as a matter in abatement.  *Id*. at 1374.  "This means that procedurally the
defense is treated 'like a defense for lack of jurisdiction,' although it is not a
jurisdictional matter."  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)
(quoting *Bryant*, 530 F.3d at 1374).  Because exhaustion is a matter in abatement, "it
should be raised in a motion to dismiss, or be treated as such if raised in a motion for
summary judgment."  *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation
omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies
involves two steps.  *Turner*, 541 F.3d at 1082.  First, the court looks to the factual
allegations in the defendants' motion, and those in the plaintiff's response.  *Id*.  If
they conflict, the court accepts the plaintiff's version as true.  "If, in that light, the
defendant is entitled to have the complaint dismissed for failure to exhaust
administrative remedies, it must be dismissed."  *Id*.; *see also Bryant*, 530 F.3d at
1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's
allegations are assumed to be true, "the court proceeds to make specific findings in
order to resolve the disputed factual issues related to exhaustion."  *Turner*, 541 F.3d
at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376).  "The defendants bear the burden
of proving that the plaintiff has failed to exhaust his available administrative

remedies." *Id*.  Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Plaintiff's Administrative Grievances[5]

The evidence in the record establishes the following.  On May 19, 2012, plaintiff filed a formal grievance requesting information concerning the investigation into the alleged abuse by Officer Carroll on November 14, 2011.  (Doc. 1, p. 19).  The formal grievance was returned without action on June 6, 2012, because plaintiff failed to file an informal grievance first.  (*Id.*, p. 20).

On June 12, 2012, plaintiff filed an informal grievance requesting information concerning the investigation into the alleged abuse by Officer Carroll on November 14, 2012.  (*Id.*, p. 21).  The response noted plaintiff listed the date of the alleged abuse as November 14, 2012, a date that had not yet occurred; thus, the informal grievance was returned without action on July 16, 2012, so plaintiff could provide a correct date.  (*Id.*).

On July 23, 2012, plaintiff submitted another informal grievance requesting information about the investigation into the November 14, 2011 incident. (*Id.*, p. 22).  The grievance was denied because the investigation "yielded no proof of wrongdoing by [Officer Carroll]."  (*Id.*).

On August 24, 2012, plaintiff filed an informal grievance concerning physical and verbal abuse by Officer Carroll on November 12, 2011, and June 22, 2012.  (*Id.*,

---

[5] Plaintiff attached his grievances to his initial complaint.  Although plaintiff filed an amended complaint, the court may consider documents attached to his initial complaint in ruling on defendants' motion to dismiss.  *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009).

p. 23-27).  Plaintiff requested that "this matter be thouroughly [sic] investigated and handled appropriately[.]" (*Id.*, p. 27).  The informal grievance was returned without action because plaintiff attached more than two additional pages of narrative to his informal grievance.  (*Id.*, p. 38).  The response also noted that the Inspector General's Office was contacted and plaintiff's allegations were found to be "unsustained." (*Id.*).

On September 14, 2012, plaintiff filed an informal grievance contesting the return of his August 27, 2012 informal grievance; plaintiff asserted there was no limit on the number of pages that can be attached to an informal grievance.  (*Id.*, p. 39).  This informal grievance was denied.  (*Id.*, p. 40).  The response informed plaintiff the rule limiting the number of pages that can be attached to an informal grievance was updated on June 3, 2012.  (*Id.*).

Plaintiff filed another informal grievance on September 19, 2012.  (*Id.*, p. 41-43).  This grievance reiterated the allegations of abuse against Sergeant Carroll plaintiff raised in the August 27, 2012 informal grievance.  (*Id.*).  The grievance was returned without action because it was not received within twenty days of when the incident or action being grieved occurred.  (*Id.*, p. 44).  The response also informed plaintiff the subject of the grievance was investigated and the Inspector General's Office advised the allegations were unsustained.  (*Id.*).  On October 8, 2012, plaintiff filed a formal grievance that asserted his failure to file a grievance within the twenty-day period should be excused because he initiated the grievance process as soon as he became aware that the investigation found his allegations were unsubstantiated.  (*Id.*, p. 45-46).  Plaintiff also contended his grievance was not untimely because informal grievances need only be filed within a "'reasonable time' which shall be assessed on a case by case basis." (*Id.*, p. 46).  Plaintiff's formal grievance was

denied; the response noted plaintiff was advised that the investigation revealed his allegations were unsubstantiated. (*Id.*, p. 47). The response, dated October 26, 2012, also informed plaintiff that he had 15 days to appeal the denial of his formal grievance. (*Id.*). Plaintiff appealed the denial of his formal grievance to the Secretary of the Florida Department of Corrections. (*Id.*, p. 48-49). The grievance appeal indicates it was signed by plaintiff on November 7, 2012, but received by the Office of the Secretary on November 16, 2012. (*Id.*). The response to the grievance appeal informed plaintiff the appeal was being returned without action because it was not received by the Office of the Secretary within 15 calendar days from the denial of the formal grievance. (*Id.*, p. 50). The response noted plaintiff's "failure to have [his] grievance receipted locally may have contributed to your failure to file the grievance timely." (*Id.*). The response further noted that plaintiff's "allegations from 11/12/11 were addressed in [his] formal response. Too much time has elapsed to grieve your allegations of harassment from 6/22/12. Furthermore, if you fear staff, you need to file an informal to the Colonel. The Colonel should have the opportunity to address these issues regarding staff at the institution." (*Id.*).

Application of Law to Facts

Defendants assert plaintiff's informal grievances "were all received beyond the 20 day timeframe for filing an informal grievance because the first informal grievance was not filed until 212 days after the alleged incident." (Doc. 47, p. 7-8); *see* FLA. ADMIN. CODE r. 33-103.011(1)(a) (providing that an informal grievance "[m]ust be received within 20 days of when the incident or action being grieved occurred[.]"). Plaintiff argues his failure to file an informal grievance within the twenty-day time limit should be excused because his shoulder injury caused "excruciating pain in his

writing arm . . . which hampered his ability to write and think effectively." (Doc. 51, p. 3). Plaintiff also notes that, following his injury, he underwent surgery, was transferred among correctional institutions and hospitals, and underwent physical therapy. (*Id.*, p. 3-4). "Plaintiff avers that as soon as he was able to comply he began the grievance process." (*Id.*, p. 4). In addition, plaintiff asserts the return of his informal grievance for failing to comply with the two-page limit should be excused because the law library contained an out-dated procedure that plaintiff relied upon. (*Id.*). Finally, plaintiff argues his failure to comply with the twenty-day limit is irrelevant because the October 26, 2012 formal grievance response addressed the merits of his claims. (*Id.*, p. 4-5).

The October 26, 2012 formal grievance response informed plaintiff that an investigation revealed his allegations of abuse were unsustained, certainly suggesting to a reasonable person that the grievance had been investigated. The response did not reject plaintiff's formal grievance as untimely, and plaintiff was informed that he could appeal the denial of the formal grievance. Because plaintiff's formal grievance was not returned as untimely and the grievance response addressed the merits of his claims, plaintiff's failure to file an informal grievance within twenty days of the alleged abuse does not establish he failed to exhaust his administrative remedies. *See Halpin v. David*, No. 4:06cv457-RH/WCS, 2009 WL 789684, * 6 (N.D. Fla. March 20, 2009) ("Where the Department of Corrections responds to an untimely grievance on the merits, and the purpose of the grievance system is fulfilled, Plaintiff's administrative remedies are exhausted.").

Defendants also assert plaintiff "never properly filed a grievance appeal with the Office of the Secretary regarding any of the claims presented in this case" because

plaintiff's lone grievance appeal was not filed within fifteen days of the denial of his formal grievance.  (Doc. 47, p. 7-8).  Plaintiff asserts that, pursuant to the prison mailbox rule,[6] his grievance appeal should be deemed filed on the date he turned it over to prison officials for mailing.  (Doc. 51, p. 5-7).  Plaintiff contends the day he signed his grievance appeal–November 7, 2012–is the day he turned it over to prison officials for mailing.  (Doc. 1, p. 48-49; Doc. 51, p. 6).  Because November 7 falls within fifteen days of October 26, plaintiff claims his grievance appeal was timely. (Doc. 51, p. 5-7).

For grievances that require mailing, the FDOC has established a logging and tracking process whereby a grievance appeal will be logged and receipted at the institution on the date an inmate turns it over to prison officials for forwarding to the central office.  FLA. ADMIN. CODE r. 33-103.006(8)(b), (c).  Plaintiff chose to bypass this process and instead submitted his grievance appeal in a sealed envelope for mailing with institutional bulk mail that is mailed daily to the central office.  *See* FLA. ADMIN. CODE r. 33-103.006(8)(e) (providing that an inmate may elect to "mail the grievance to central office directly and bypass the logging/tracking process" by submitting "his or her grievance in a sealed envelope to be placed in the institutional bulk mail that is to be mailed daily to central office").

Florida courts have applied the prison mailbox rule to the submission of grievances.  In *Waters v. Dep't of Corr.*, an inmate's grievance appeal was returned "without action because it was received more than fifteen calendar days after the institutional response giving rise to the appeal."  144 So. 3d 613, 614 (Fla. 1st DCA

---

[6] Under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.  *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988).

2014). The grievance response indicated inmate Waters' failure to use the logging and tracking process may have contributed to his grievance appeal's untimeliness. *Id.* Through a petition for writ of mandamus filed in state court, Waters argued his grievance appeal was timely and its merits should be addressed because it was turned over to prison officials for mailing within the 15 day deadline. *Id.* The First District Court of Appeal rejected the argument that the FDOC's provision of logging and tracking process rendered the mailbox rule inapplicable to grievance appeals sent through regular mailing channels. *Id.* at 617 ("The Department argues that this rule effectively supplants the prison mailbox rule developed by Florida courts in the context of inmate grievance appeals. The Department asserts that because the logging/tracking process avoids the vagaries of the U.S. mail, inmates are not 'required' to utilize the U.S. mail[.] We must disagree."). Instead, the court held that an inmate's assertion that he turned a grievance appeal over to prison officials for mailing created a rebuttable presumption that the grievance appeal was filed on the date the inmate claimed. *Id.* at 615-18.

Defendants attempt to distinguish *Waters* by noting the inmate in that case had his grievance appeal date stamped by prison officials before he mailed to the Office of the Secretary. (Doc. 47, p. 9). Plaintiff's failure to have his grievance appeal date stamped will not preclude him from taking advantage of the mailbox rule. *See Waters*, 144 So. 3d at 617 fn. 4 ("However, we do not wish to imply such a date stamp is the only way an inmate can ' prove' the date of mailing in order to obtain the benefit of the presumption."). Although plaintiff did not explicitly note on the grievance appeal that he placed it into the hands of prison officials for mailing, plaintiff is entitled to the benefit of the presumption because he signed and dated his

grievance and he asserts he turned the grievance over to prison officials for mailing on November 7, 2012, the date indicated on the greivance. (Doc. 1, p. 48-49; Doc. 51, p. 6). The grievance mechanism is obviously in the hands of the Department of Corrections, and each vagary of that system should not be grasped to defeat a claim, with no considertion of the merits. Accordingly, as defendants have presented no evidence to rebut the presumption plaintiff submitted his grievance appeal to prison officials for mailing within fifteen days of the denial of his formal grievance, the undersigned finds plaintiff's grievance appeal was timely and plaintiff exhausted his available administrative remedies.

This conclusion finds practical support in the present case. Although prison officials claimed plaintiff's grievance appeal was returned without action, the merits of plaintiff's grievance were addressed in the response. (Doc. 1, p. 50). Instead of simply informing plaintiff that his appeal was being returned without action, the response noted "[y]our allegations from 11/12/11 were adressed in your response. Too much time has elapsed to grieve your allegations of harassment from 6/22/12." (*Id.*). Thus, the appeal response implicitly adopted the formal grievance response, which advised plaintiff that his allegations of abuse were found to be unsustained. (*Id.*, p. 47). Based on these considerations, the undersigned recommends that plaintiff's claims should not be dismissed based on a failure to exhaust administrative remedies.

Verbal Threats

The motion to dismiss next contends plaintiff's allegations concerning Officer Carroll's verbal threats in Claims II and III fail to state claim a claim upon which

relief can be granted.[7]  (Doc. 47, p. 11-12).  In response, plaintiff asserts that a verbal threat can constitute an Eighth Amendment violation where "it involves plausible threats of death or injury."  (Doc. 51, p. 8).

In general, courts have held that verbal harassment, abuse, or taunting is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.  *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n. 1 (11th Cir. 1989) (noting that verbal taunts, alone, are insufficient to state a constitutional violation); *Hernandez v. Florida Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (holding that plaintiff's allegations of verbal abuse and threats by prison officials did not state a constitutional claim because the defendants never carried out the threats, and "verbal abuse alone is insufficient to state a constitutional claim"); *see also Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (holding that the sheriff's laughing at inmate and threatening to hang him did not violate the Constitution); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (reiterating "verbal harassment generally does not violate the Eighth Amendment"); *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) (holding that "[v]erbal threats do not constitute a constitutional violation"); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (holding that threatening language and gestures of a corrections officer do not generally violate an inmate's Eighth Amendment rights).

The undersigned recognizes that some types of verbal abuse, with or without accompanying conduct, may constitute a violation of the Eighth Amendment.  Here, however, plaintiff's allegations clearly do not rise to the level of a constitutional

---

[7] In Claim II, plaintiff alleges Carroll used excessive force against him by grabbing him by the throat, choking him, and threatening him.  (Doc. 36, p. 13).  As plaintiff has styled Claim II as an excessive force claim, the court will limit its discussion to Claim III, in which plaintiff claims an Eighth Amendment violation based solely on Carroll's alleged threats.  (*Id.*, p. 14).

violation.  Following his return to Holmes CI–over seven months after the alleged assault–plaintiff claims Officer Carroll stopped him on his way to breakfast and stated, "[d]o you remember me?  As you can see I'm still here, unfortunately for you they didn't do anything to me.  You probably don't understand what I'm telling you.  What I'm telling you is to be careful."  (Doc. 36, p. 12).   Based on his prior experience with Officer Carroll, plaintiff alleges he felt threatened and suffered mental and emotional anguish as a result of this interaction.  (*Id.*).  As defendants note, however, viewed objectively, Carroll's statements do not actually contain a threat of physical harm, despite plaintiff's subjective sensibilities.  (Doc. 47, p. 12).  Determining whether language used by prison staff constitutes an Eighth Amendment violation cannot be predicated solely on an inmate's subjective reaction to that language.  Any other rule would be unworkable in a prison environment.  Carroll's relatively innocuous comments, assuming the truth of the allegations, might be crude, but certainly do not rise to the level of cruel and unusual punishment.  Thus, plaintiff's allegations concerning Officer Carroll's statements to him (Claim III) do not describe a violation of the Eighth Amendment and are due to be dismissed.

<u>Failure to Report a Use of Force and Providing False Statements</u>

Defendants also contend that the portion of Claims IV and V that allege defendants failed to report a use of force and provided false statements to investigators fail to state a claim under either the Eighth or Fourteenth Amendment.  (Doc. 47, p. 12-13).  Defendants note that violations of state law or regulations do not, by themselves, state a cuase of action for violation of the Eighth or Fourteenth Amendments.  (*Id.*, p. 12).  In response, plaintiff emphasizes that he pled a failure to

protect against Officer Lindsey in Claim V and that both defendants maintained a "code of silence" that allowed further abuse to occur.  (Doc. 51, p. 9-11).

Because plaintiff claims the defendants' actions resulted in him suffering additional abuse, further factual development of these claims is warranted before determining whether the defendants' actions constitute a violation of plaintiff's constitutional rights.   The undersigned, therefore, recommends that defendants' motion to dismiss Claims IV and V be denied.  This recommendation leaves for another day inchoate questions of proximate cause.

Motion to Stay

Finally, plaintiff has filed motion to stay this action.  (Doc. 52).  Plaintiff asserts that following his release from state custody, he will be placed in the custody of Immigrations and Custom Enforcement and subject to removal proceedings.  (*Id.*, p. 1).  Because he anticipates he will be transferred among multiple facilities, plaintiff is concerned he will not receive mail in a timely fashion and will have difficulty conducting legal research.  (*Id.*, p. 1-2).  As observed above at note 1, plaintiff's transfer to Federal custody has come to pass.  Defendants oppose plaintiff's motion. (Doc. 54).  Plaintiff's motion will be denied.  Plaintiff is advised that he is obligated to keep the court apprised of his current location by filing a notice of change of address each time he is relocated to a different detention facility.  Moreover, if plaintiff requires more time to respond to court orders, he may file motions for extensions of time.

Accordingly, it is ORDERED:

1.     Plaintiff's motion to stay (doc. 52) is DENIED.

2.     The clerk shall change the docket to reflect that plaintiff's current location is the Krome Service Processing Center, 18201 S.W. 12th Street, Miami, Florida, 33194.  The clerk shall forward a copy of this Order and Report and Recommendation to plaintiff at that address.

And it is respectfully RECOMMENDED:

1.     That defendants' motion to dismiss (doc. 47) be GRANTED in part and DENIED in part as follows:

     a.     Defendants' motion to dismiss this action based on plaintiff's failure to exhaust his administrative remedies should be DENIED.

     b.     Defendants' motion to dismiss plaintiff's claims against defendant Carroll concerning allegations of verbal threats (Claim III) should be GRANTED and plaintiffs' claims DISMISSED WITH PREJUDICE.

     c.     Defendants' motion to dismiss plaintiff's claims against defendants Carroll and Lindsey concerning their provision of false statements to investigators and their failure to report a use of force  (Claims IV and V) should be DENIED.

2.     That this matter be referred to the undersigned for further proceedings on plaintiff's claims against defendant Carroll (Claims I, II, and IV) and plaintiff's claims against defendant Lindsey (Claim V).

At Pensacola, Florida, this 30th day of July, 2015.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S.Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.